# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **MICHAEL SNELLGROVE,** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
| **v.** | ) Case No.: 4:13-CV-2062-VEH |
| | ) |
| **THE GOODYEAR TIRE &** | ) |
| **RUBBER COMPANY, et al,** | ) |
| | ) |
|    **Defendants.** | ) |

## MEMORANDUM OPINION

On July 2, 2012, this civil action was filed in the Circuit Court of Etowah County, Alabama, by the plaintiff, Michael Snellgrove, against the defendant, The Goodyear Tire & Rubber Company ("Goodyear"). (Doc. 1 at 1; doc. 6 at 3; doc. 6-2 at 3). The original action sought only workers' compensation benefits from Goodyear. (Doc. 1 at 1; doc. 6 at 3; doc. 6-2 at 3).

On August 26, 2013, the plaintiff filed a "First Amended and Restated Complaint" which, in addition to restating the original workers' compensation claim against Goodyear (Count One), added two new defendants, Liberty Mutual Group, Inc. ("Liberty"), and Helmsman Management Services, LLC ("Helmsman"). (Doc. 1 at 11). The motion to remand states that Liberty is the workers' compensation

insurer for Goodyear and that Helmsman is a third party administrator who administers workers' compensation insurance for Goodyear and Liberty Mutual. (Doc. 6 at 4). Against these new defendants, the complaint added a state law claim of outrage (Count Two). (Doc. 1 at 13). On October 22, 2013, the state court severed the workers' compensation claims against Goodyear from the outrage claims against the other defendants and assigned them to separate cases. (Doc. 1 at 18).[1] The latter claims were assigned state court case number CV-2012-900375.01. (Doc. 1 at 2). That case was removed to this court on November 12, 2013, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 1).

The case is before the court on the plaintiff's motion to remand, filed on December 2, 2013. (Doc. 6). Pursuant to this court's uniform scheduling order, the "opponent's responsive brief shall be filed no later than fourteen (14) calendar days thereafter." (Doc. 2 at 23). Albeit late, the defendants filed their response to the motion on January 2, 2014. (Doc. 9). Further, the defendants have set out the basis for removal in their Notice of Removal. (Doc. 1). The court will consider the representations in that document as well in ruling on the motion. For the reasons stated herein, the motion will be **GRANTED**, and this case **REMANDED** to the

---

[1] The motion to remand states that the cases were severed on September 30, 2013. (Doc. 6 at 4). However, the court's order, attached to the notice of removal at document 1 pages 18 and 21, reflects that it was signed on October 22, 2013. (Doc. 1 at 18, 21).

Circuit Court Etowah County, Alabama.

**I.     STANDARD**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994). For removal to be proper, the court must have subject-matter jurisdiction in the case. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the Defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). In addition, the removal statute must be strictly construed against removal, and any doubts should be resolved in favor of remand. *See, City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012) ("[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court.") (citation omitted).

"In removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." *Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005) (citation omitted); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir.2001).

That burden goes not only to the issue of federal jurisdiction, but also to

> questions of compliance with statutes governing the exercise of the right of removal. *Albonetti v. GAF Corporation-Chemical Group,* 520 F.Supp. 825, 827 (S.D. Texas 1981); *Jennings Clothiers of Ft. Dodge, Inc. v. U.S. Fidelity & Guaranty Co.,* 496 F.Supp. 1254, 1255 (D.Iowa 1980); *Fort v. Ralston Purina Company,* 452 F.Supp. 241, 242 (E.D.Tenn.1978).

*Parker v. Brown*, 570 F.Supp. 640, 642 (D.C. Ohio, 1983).

## II. ANALYSIS

The plaintiff makes three arguments why this case should be remanded. First, he argues that this case "arises under the Alabama Workers' Compensation Act," and so removal is prohibited by 28 U.S.C. § 1445(c). Second, he argues that the notice of removal was untimely under 28 U.S.C. § 1446(b). Finally, the plaintiff argues that this court does not have subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the defendants have failed to demonstrate that this case has the requisite amount in controversy.[2] The court need address only this last argument, as it finds that the amount in controversy has not been met.

If, as in this case, a plaintiff makes "an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional

---

[2] The defendants claim that this court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, which provides in pertinent part: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." It is undisputed that diversity of citizenship exists in this case.

requirement." *Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1357 (11th Cir.1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir.2000). The Eleventh Circuit has stated:

> We reiterate that the burden of proving jurisdiction lies with the removing defendant. A conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden. *See Laughlin v. Kmart Corp.,* 50 F.3d 871, 873 (10th Cir.1995); *Allen,* 63 F.3d at 1335; *Gaus v. Miles,* 980 F.2d 564, 567 (9th Cir.1992); *see also Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1097 (11th Cir.1994) (concluding that removing defendant did not meet burden of proving amount in controversy where it offered "nothing more than conclusory allegations"); *Gaitor v. Peninsular & Occidental S.S. Co.,* 287 F.2d 252, 255 (5th Cir.1961) (stating that removing defendant must make "affirmative showing ... of all the requisite factors of diversity jurisdiction").

*Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319-20 (11th Cir. 2001).

"In some cases, this burden requires the removing defendant to provide additional evidence demonstrating that removal is proper." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (footnotes omitted). When this method is used, a removing defendant may rely on its own affidavits, declarations, or other documentation to establish the amount in controversy. *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1241 (11th Cir. 2013) *(citing Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 755 (11th Cir.2010)). However, "under any manner of proof, the jurisdictional facts that support removal must be judged at the time of the

removal, and any post-petition affidavits are allowable only if relevant to that period of time." *Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 949 (11th Cir. 2000).

The defendant is not always required to provide extrinsic evidence of the amount in controversy. As the Eleventh Circuit has noted, sometimes

> it may be "facially apparent" from the pleading itself that the amount in controversy exceeds the jurisdictional minimum, even when "the complaint does not claim a specific amount of damages." *See id.* at 754 (quoting *Williams v. Best Buy Co., Inc.,* 269 F.3d 1316, 1319 (11th Cir.2001)).
>
> If a defendant alleges that removability is apparent from the face of the complaint, the district court must evaluate whether the complaint itself satisfies the defendant's jurisdictional burden. In making this determination, the district court is not bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought. *Id.* at 771. Indeed, in some cases, the defendant or the court itself may be better-situated to accurately assess the amount in controversy. *See id.* (explaining that "sometimes the defendant's evidence on the value of the claims will be even better than the plaintiff's evidence," and that a court may use its judgment to determine "which party has better access to the relevant information.").
>
> Eleventh Circuit precedent permits district courts to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether it is facially apparent that a case is removable. *See id.* at 754. Put simply, a district court need not "suspend reality or shelve common sense in determining whether the face of a complaint ... establishes the jurisdictional amount." *See id.* at 770 (quoting *Roe v. Michelin N. Am., Inc.,* 637 F.Supp.2d 995, 999 (M.D.Ala.2009)); *see also Williams,* 269 F.3d at 1319 (11th

> Cir.2001) (allowing district courts to consider whether it is "facially apparent" from a complaint that the amount in controversy is met). Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.

*Roe*, 613 F.3d at 1061-62.

The defendants argue that "[h]ere, judicial experience and common sense dictate that the amount in controversy put forth in [p]laintiff's complaint easily exceeds $75,000." (Doc. 1 at 6). The outrage count alleges that

> – "Liberty . . . and Helmsman were wrongfully and unnecessarily denying necessary medical treatment for the [p]laintiff's right shoulder injury;"
>
> – "Liberty . . . and Helmsman unnecessarily used the 'utilization review process' to deny medical treatment to . . . patients whose care is directed by these [d]efendants;" and
>
> – "[t]hese [d]efendants have also intentionally failed to pay temporary total disability payments to the [p]laintiff despite their knowledge that he has not reached maximum medical improvement and such benefits are owed."

(Doc. 1 at 14). The First Amended Complaint states that the treatment alleged to have been wrongfully denied included "surgery for a full thickness tear to [the plaintiff's] rotator cuff on his right shoulder." (Doc. 1 at 14). It alleges that the plaintiff "suffers from debilitating pain," (doc. 1 at 12) has suffered "a permanent impairment and disability (doc. 1 at 12), and that the defendants have failed to pay for

temporary total disability benefits, surgery, and physical therapy (doc. 1 at 13). The complaint claims that the actions of the defendants have "caused and will continue to cause extreme financial hardships to the [p]laintiff." (Doc. 1 at 14). It also alleges that the defendants' actions have caused the plaintiff "to suffer emotional distress so severe that no reasonable person could be expected to endure it." (Doc. 1 at 15). While the plaintiff seeks compensatory and punitive damages (doc. 1 at 16), he demands judgment only "in an amount to be determined by a jury." (Doc. 1 at 16).

This case is the classic "fact free" case dealt with in *Lowery*. Here, while the court's experience and common sense certainly informs it that surgery, physical therapy, and disability payments can be expensive, for it to say, based only on the bare allegations of the complaint, that the costs of each of them, or all three combined, exceeds $75,000 would "amount to unabashed guesswork, and such speculation is frowned upon." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1210-11 (11th Cir. 2007). The additional allegations of "pain," "financial hardship," and "emotional distress," also do not help the court in the absence of more specifics. Finally, the court cannot say that the claims for punitive damages, without a clear picture of the dollar value of compensatory damages, or more facts describing the defendants' alleged conduct, will make this case worth more than $75,000. "[W]ithout facts or specific allegations, the amount in controversy [can] be 'divined

[only] by looking at the stars'—only through speculation—and that is impermissible." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 753-54 (11th Cir. 2010) (quoting *Lowery*, 483 F.3d at 1209); *cf. Williams*, 269 F.3d at 1318, 1320 (allegations that the plaintiff tripped over a curb and suffered permanent physical and mental injuries, that she incurred substantial medical expenses, that she suffered lost wages, that she experienced a diminished earning capacity, and that she would continue to suffer these damages in the future, along with a demand for both compensatory and punitive damages, did not render it facially apparent that the amount in controversy exceeded $75,000).

> A different scenario is presented
>
> when a removing defendant makes specific factual allegations establishing jurisdiction and can support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations. That kind of reasoning is not akin to conjecture, speculation, or star gazing.

*Pretka*, 608 F.3d at 754. In their notice of removal, the defendants state that, in addition to the allegations in the complaint, they "will demonstrate that the amount in controversy is satisfied . . . through additional evidence." (Doc. 1 at 6). However, the only "evidence" they provide is in the form of citations, without discussion, to verdicts in two Alabama cases which also dealt with outrage claims in the context of

a wrongful denial of medical treatment under the Alabama Workers' Compensation Act.  (Doc. 1 at 6) (*citing Travelers Indem. Co. of Illinois v. Griner*, 809 So. 2d 808 (Ala. 2001); *Cont'l Cas. Ins. Co. v. McDonald*, 567 So. 2d 1208 (Ala. 1990)).

Judge Steele, in the Middle District of Alabama, faced a similar tactic in *Hill v. Toys "R" Us, Inc.*, No. CIV.A.10-0404-WS-B, 2010 WL 3834532 (S.D. Ala. Sept. 24, 2010).  In *Hill*, the plaintiff alleged that she

> was an invitee in the defendant's store when a "large and heavy box fell on her." The complaint alleges that the plaintiff "suffered injury to her upper back, neck, right arm and head"; "was bruised and contused and otherwise injured and damaged"; "has experienced and continues to experience pain and suffering"; "has experienced and continues to experience emotional distress and mental anguish"; and "has incurred and continues to incur doctor, hospital, drug and rehabilitation expenses." The complaint demands compensatory and punitive damages in an amount unstated other than as exceeding the state court's $10,000 jurisdictional threshold.

*Hill*, 2010 WL 3834532 at *1.  The court first determined that there was "no way to determine from the complaint whether the plaintiff has been injured so badly as to place over $75,000 in controversy." *Id.*  The court then wrote:

> Looking to the notice of removal, the Court finds only a single basis for the defendant's position that the amount in controversy requirement is satisfied: a "nationwide search" revealed 16 jury verdicts exceeding $75,000 in cases involving maintenance of a defendant's premises and resulting personal injuries. The defendant's only "evidence" is counsel's affidavit that, based on his research into recent verdicts and settlement agreements, he believes the amount in controversy exceeds $75,000.

10

In *Lowery v. Alabama Power Co.,* 483 F.3d 1184 (11th Cir.2007), the removing defendant under the Class Action Fairness Act noted that "plaintiffs in recent mass tort actions in Alabama had received either jury verdicts or settlements for greater than" the jurisdictional amount. *Id.* at 1189. The Court rejected such evidence because it had not come from the plaintiffs, but it went on to "question whether such general evidence is ever of much use in establishing the value of claims in any one particular suit." *Id.* at 1221. Other verdicts are certainly inadequate to carry a removing defendant's burden when the defendant fails to provide details about the facts of the other cases, or when there is no "specific detail about the present action," or both. *Id.* In such a situation, there is insufficient information to allow a comparison between the other cases and the removed case, and thus a court cannot "possibly ascertain how similar the current action is to those the defendants cite." *Id.; see also Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 753 (11th Cir.2010) (the *Lowery* defendants failed because they "failed to explain the facts of those other tort cases or link them to the facts of the *Lowery* case"); *cf. Federated Mutual Insurance Co. v. McKinnon Motors, LLC,* 329 F.3d 805, 809 (11th Cir.2003) ("[M]ere citation to what has happened in the past does nothing to overcome the indeterminate and speculative nature of [the plaintiff's] assertion" that the amount in controversy exceeds $75,000).

Assuming without deciding that *Lowery* leaves the door open for a removing defendant to rely on (or solely on) awards in other cases, the Court has been provided insufficient information to allow it to ascertain how similar this action is to those. Without that showing of similarity, the other cases cannot support the inference that the amount in controversy here exceeds $75,000.

. . .

At bottom, all the defendant can say is that, on occasion, shoppers injured in stores have been awarded over $75,000. This is as unobjectionable a proposition as it is unsurprising, but it says nothing about whether *this* complaint, alleging that *this* plaintiff, injured on *this*

> occasion in *this* (largely unknown) fashion, receiving *these* (largely unknown) injuries and experiencing *these* (largely unknown) damages, places more than $75,000 in controversy in *this* case. Given the opaque complaint in this case and the superficial description of other cases, the defendant offers not "reasonable extrapolation" but only "speculation," and the amount in controversy cannot be shown by the latter. *Pretka*, 807 F.3d at 753–54.

*Id*. at 2-3 (emphasis in original) (footnotes omitted).

Similar to *Hill*, in this case, other than to allege that the cited cases both involve outrage claims in the context of failure to pay workers' compensation medical benefits, the defendants make no attempt to demonstrate similarities to the instant case. Indeed, without more factual allegations in the complaint, it is unlikely that any similarities could be shown. The cases do not help carry the defendants' burden.

In the notice of removal, the defendants cite *Love v. N. Tool & Equip. Co., Inc.*, 08-20453-CIV, 2008 WL 2955124 (S.D. Fla. Aug. 1, 2008), and *Butler v. Charter Commc'ns, Inc.,* 755 F. Supp. 2d 1192 (M.D. Ala. 2010), again without discussion, for the proposition that "[c]ourts in the Eleventh Circuit have considered a plaintiff's claims for mental anguish or emotional distress in determining the amount in controversy." (Doc. 1 at 6).

An examination of the facts in *Love* reveals that *Love* does not support the defendants' position. In *Love*, the court wrote:

> Northern Tool asserts that it has demonstrated by a preponderance

12

> of the evidence that the amount in controversy exceeds $75,000.00. The evidence Northern Tool refers to is Love's $70,000.00 settlement offer, an affidavit from Northern Tool's Vice President of Human Resources, and its own unsupported calculations of Love's damages. The affidavit attached to the Notice of Removal states that, during Love's last full year of employment as a Store Manager, she received total gross wages of $83,669.72 ($47,985.98 in base salary and $35,683.74 in bonus earnings). The affidavit further states that the Store Manager who replaced Love received bonus payments equaling $11,609.89 during 2007 and $5,977.89 to date in 2008.
>
> This evidence, however, does not provide me with any information on which I can calculate Love's attorneys' fees, emotional distress damages, and punitive damages. The only damages I can calculate with any degree of certainty are Love's back pay and front pay, which are not enough to support federal diversity jurisdiction.

*Love*, 2008 WL 2955124, at *2.  In examining the value of the plaintiff's emotional distress claim, the court wrote:

> Determining the value of Love's emotional distress claim is a difficult task to undertake without a large amount of speculation. Northern Tool suggests that I accept, for purposes of determining the amount in controversy, that Love's emotional distress award will equal her award for back pay based on her base salary alone, i.e., $27,999.00. Northern Tool does not, however, offer any evidence or point to any underlying facts that might support such an assertion. Instead, it cites to cases where courts have awarded emotional distress damages well in excess of Love's $27,999.00 in lost wages <u>without comparing the factual or legal claims made in those cases to Love's claims or explaining the relevance of those awards to the issue at hand</u>. Love, on the other hand, notes that she has not undergone any psychological counseling or medical attention that would make her emotional distress any more significant than the garden variety discrimination claim. A plaintiff need not, however, "introduce evidence of medical treatment to recover for emotional distress ... under the FCRA." *Brown,* 2005 WL 1126670, at

> 5 (citing *Munoz v. Oceanside Resorts, Inc.,* 223 F.3d 1340, 1348-49 (11th Cir.2000)). <u>Although Love may recover some damages for emotional distress, there is no evidence before me to determine that amount. Under these circumstances, I cannot divine some dollar amount as emotional distress damages to aggregate to Love's back pay damages so that Northern Tool can meet the jurisdictional threshold for federal diversity jurisdiction.</u> *See Lowery,* 483 F.3d at 1215 (instructing courts not to speculate regarding the propriety of removal where the evidence is insufficient to establish that removal was proper).

*Id.* at *5 (emphasis added). Similar to *Love*, here there is no evidence upon which this court can base an award of emotional distress damages.[3]

The instant case is distinguishable from the defendants' second cited case, *Butler*. In that case, the court found the amount in controversy satisfied by copies of records from the Macon County Revenue Commissioner's office indicating that the plaintiff had suffered a property loss of approximately $110,000. *Butler*, 755 F. Supp. 2d at 1196. No evidence of the value of the plaintiff's claims has been produced in this case.

Finally, in the notice of removal, the defendant cites to and discusses *Blackwell v. Great American Financial Resources, Inc.*, 620 F. Supp. 2d 1289 (N.D. Ala. 2009) (Blackburn, J.), a case decided in this district. (Doc. 1 at 7). In *Blackwell*, noting first

---

[3]Notably, the *Love* court had before it <u>evidence</u> which allowed it to compute the value of at least some of the plaintiff's <u>compensatory</u> damages (back pay). Such evidence is lacking in this case. Still, the court in *Love* <u>declined</u> to assume a similar amount of mental anguish damages.

that "[t]he compensatory damages claimed in the First Amended Complaint . . . total $23,172.28," the court found that the plaintiff could constitutionally also be awarded punitive damages of more than $51,827.72, bringing the amount in controversy to more than $75,000. *Blackwell*, 620 F. Supp. 2d at 1291. Stating that "it is the constitutionally-permissible limits of punitive damages in a particular case that are used to compute the jurisdictional amount-in-controversy requirement," the court found that

> [w]hen the punitive damages claims for what "may be awarded" are considered in relation to both the compensatory damages claims and the conduct alleged, a punitive award of slightly more than double the compensatory damages claim would occasion an amount in controversy that exceeds the jurisdictional minimum. Such an amount for punitive damages is uncontroversially within the limits of the Due Process Clause.

*Id.* The court need not decide whether or not *Blackwell* is persuasive in its reasoning because it is distinguishable on its facts. Unlike *Blackwell*, in the instant case there is no stated amount of compensatory damages, nor is there evidence of same. Without evidence of the compensatory damages at issue, this court cannot calculate a constitutionally permissible amount of punitive damages which might be awarded.

The response to the motion to remand (document 9) provides no additional support for the defendants' position. Again, in that document, the defendants merely argue that, because there is an outrage count which includes a request for punitive

15

damages, the amount in controversy <u>must</u> be more than the jurisdictional threshold. (Doc. 9 at 13-17 (again citing to *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058 (11th Cir. 2010); *Blackwell v. Great American Financial Resources, Inc.*, 620 F. Supp. 2d 1289 (N.D. Ala. 2009) (Blackburn, J.); *Love v. N. Tool & Equip. Co., Inc.*, 08-20453-CIV, 2008 WL 2955124 (S.D. Fla. Aug. 1, 2008); *Butler v. Charter Commc'ns, Inc.*, 755 F. Supp. 2d 1192 (M.D. Ala. 2010)). Once again, no <u>facts</u> are set out to assist the court in its analysis.

### III.   CONCLUSION

Based on the foregoing, the court finds that the defendants have not carried their burden of demonstrating the requisite amount in controversy by a preponderance of the evidence. Accordingly, the motion to remand will be **GRANTED**, and this case will be **REMANDED** to the Circuit Court of Etowah County, Alabama for further proceedings.

**DONE** and **ORDERED** this 22nd day of January, 2014.

*/s/ Virginia Emerson Hopkins*
**VIRGINIA EMERSON HOPKINS**
United States District Judge
